## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERCIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19-cr-30053 |
| ) | |
| PETE GREEN, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant Pete Green's Motion to Dismiss Indictment Based on No Probable Cause to Assert (d/e 13) (Motion). The Motion asks to dismiss the Indictment (d/e 9) because Green claims that the affidavit submitted to support the application for Green's arrest warrant did not establish probable cause to arrest. For the reasons set forth below, this Court recommends that the Motion should be DENIED.

### THE CRIMINAL COMPLAINT AND WARRANT AFFIDAVIT

On September 12, 2019, the Government filed a Criminal Complaint (d/e 1) (Complaint) against Defendant Pete Green. The Complaint alleged that on or about September 11, 2019 Green committed the crimes of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession of a

firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). The Government attached to the Complaint an Affidavit in Support of Arrest (Affidavit) of Russell Lehr, a Springfield, Illinois, Police Department Detective assigned as a Task Force Officer with the United States Drug Enforcement Administration (DEA). The Affidavit was the only evidence present in support of the request for an arrest warrant. In such situations, the sufficiency of the probable cause to arrest Green rests solely on the strength of the Affidavit. United States v. Peck, 317 F.3d 754, 755 (7th Cir. 2003). Detective Lehr stated the following under oath in the Affidavit.

Detective Lehr spent most of his career from 2010 to 2019 investigating narcotics crimes. He received specialized training in narcotics investigations. He also participated in numerous narcotics trafficking investigations. As a DEA Task Force Officer, Detective Lehr was authorized to investigate violations of federal drug trafficking laws and to execute warrants. Affidavit ¶ 1.

On September 10, 2019, an individual worked as a Confidential Source (CS) for the Illinois State Police Central Illinois Enforcement Group and the Sangamon County, Illinois, Sheriff's Office. The CS cooperated with law enforcement for financial gain. The CS had prior convictions for larceny, forgery, fraudulent activity, and obstructing. The CS previously provided reliable

information that has been proven accurate to the Sangamon County Sheriff's Office and Illinois State Police Central Illinois Enforcement Group relating to drug trafficking activity in the Springfield, Illinois area.  Affidavit ¶ 6.

The CS told law enforcement authorities that a person known to the CS as "Paris" was in Chicago, Illinois, attempting to purchase a large quantity of heroin and cocaine.  The CS had previously contacted law enforcement and stated that "Paris" had provided the CS with approximately 35 grams of heroin to sell on "Paris's" behalf.  The CS had turned the 35 grams of heroin over to law enforcement.  Affidavit ¶¶ 5, 7.

On September 10, 2019, the CS made a recorded telephone call to "Paris" at phone number 217-303-9058. The CS told "Paris" that he sold 5 grams of the heroin for $400.  The CS told "Paris" that he had someone else interested in purchasing $1,500.00 worth of heroin.  The CS asked "Paris" how much to sell for $1,500.00.  "Paris" told the CS to sell 18 grams for $1,500.00.  Affidavit ¶ 8.

On September 11, 2019, the CS called "Paris" at the same telephone number.  The CS told "Paris" that the CS had $1,900.00 from the sale of the heroin.  The CS asked "Paris" if the CS could front the remaining heroin and "Paris" said "Do what you do."  "Paris" also told the CS that "Paris" would meet the CS later that afternoon in the Springfield, Illinois, area to collect the $1,900.00.  Affidavit ¶ 9.

On the same day, September 11, 2019, at approximately 2:30 p.m., the CS made another recorded call to "Paris" at the same telephone number. "Paris" told the CS to meet him at a designated location within the Springfield city limits for the purpose of collecting the $1,900.00. "Paris" and the CS agreed to meet shortly. Affidavit ¶ 10.

Law enforcement officials searched the CS and the CS's vehicle and found no contraband. The CS was given $1,900.00 in Official Advance Funds for the exchange. The CS and the CS's vehicle were equipped with video/audio recording devices hidden in the CS's vehicle. At approximately 2:37 p.m., the CS left to meet "Paris." Law enforcement officials kept the CS under constant surveillance during this encounter. Officials observed CS arrive at the designated location. Law enforcement officials observed a black male later identified at Defendant Green walk to the CS's vehicle and stand behind the trunk. The trunk lid to the CS's vehicle opened and Green placed a backpack into the trunk of the vehicle. Green closed the trunk lid, entered the CS's vehicle, and sat in the front passenger seat. The CS drove off. CS's vehicle was kept under constant surveillance and was observed by law enforcement officials leaving the designated area. Affidavit ¶ 12.

Law enforcement officials listened to the conversation between the CS and Green in the CS's vehicle in real time. Law enforcement officials heard the CS

give Green the $1,900.00.  Law enforcement officials later viewed the video recording of the CS giving Green the $1,900.00 of Official Advance Funds and Green putting the funds into his left pants pocket.  The CS's vehicle arrived at another location within the Springfield city limits.  At approximately 3:02 p.m., law enforcement officials heard Green exit the vehicle at this location.  The CS then called law enforcement officials by cell phone.  Law enforcement officials directed the CS to drive to a pre-arranged location.  Law enforcement officials followed the CS's vehicle as the CS drove to the pre-arranged location.  Affidavit ¶ 13.

The CS told law enforcement officials that the backpack Green put in the trunk was still there.  The CS opened the trunk and showed the backpack to law enforcement officials.  Law enforcement officials took a photograph of the backpack in the trunk but did not search the backpack at that time.  The CS stated that the CS had told Green that the CS was going to meet the person to whom CS fronted the rest of the heroin.  At 3:15 p.m., the CS made a recorded telephone call with Green.  The CS called Green at the same telephone number, 217-303-9058.  During the telephone call the CS told Green that the CS would pick up Green at the location where the CS had dropped off Green.  Affidavit ¶ 14.

The CS drove to the location where the CS had dropped off Green.  Law enforcement officials kept the CS under constant surveillance at this time.  Green

appeared at the agreed location wearing the same clothes he wore during the earlier encounter that day. Green got into the front passenger seat of the CS's vehicle. The CS drove off. Law enforcement officials followed. Affidavit ¶ 15.

Law enforcement officials contacted an Illinois State Police K9 Unit (K9 Unit) to make a traffic stop of CS vehicle if possible. The Illinois State Police Officer in the K9 Unit observed the CS vehicle commit traffic violations of improper lane usage and failure to signal. The K9 Unit made a traffic stop of the CS's vehicle. The video equipment in the CS's vehicle recorded that when the K9 Unit initiated the traffic stop, Green removed the $1,900.00 in Official Advance Funds from his pocket and placed the funds into the center console of the CS's vehicle. Affidavit ¶¶ 16.

The Illinois State Trooper in the K9 Unit used the police drug sniffing dog (K9) to conduct a free air sniff around the CS's vehicle. The K9 alerted on the trunk. A search of the CS's vehicle was conducted. The black backpack in the trunk contained a loaded Taurus 9 millimeter pistol, approximately 50 grams of suspected heroin, approximately 20 grams of crack cocaine, an electronic scale, and four cell phones. Green was taken into custody for questioning. Affidavit ¶ 17.

On September 11, 2019, Detective Lehr and Illinois State Police Sergeant Hayes interviewed Green.[1] The officers first read Green his constitutional rights and Green acknowledged that the officers read him his rights and that he understood those rights. The officers told Green that he was brought in for questioning because of the items found in the backpack. Green stated that he was just a passenger in the CS's vehicle and had no knowledge of the backpack. Green then asked to speak to an attorney and refused to answer any additional questions. Affidavit ¶ 19.

On September 11, 2019, Detective Lehr checked the Illinois Department of Corrections' website and determined that Green was currently on parole for attempted murder intent to kill and murder intent to kill. He was convicted in Cook County, Illinois, and was incarcerated on April 23, 2009 and released on parole on February 8, 2019. Affidavit ¶ 18.

PROCEEDINGS AFTER THE WARRANT APPLICATION

On September 12, 2019, this Court reviewed the Complaint and the Affidavit. This Court found probable cause and issued an arrest warrant (Warrant) for Defendant Green. Warrant (d/e 3). On September 13, 2019, Green was arrested pursuant to the Warrant. Warrant Returned Executed (d/e 8).

---

[1] Detective Lehr did not state Sergeant Hayes's first name in the Affidavit.

On October 2, 2019, a grand jury indicted Defendant Green for distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One); possession of with intent to distribute a fentanyl analog, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Two); possession with intent to distribute cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Three); possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C.  §§ 924(c)(1)(A)(i); (c)(1)(B)(i), and (c)(1)(A)(iii) (Count Four); felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Five); Forfeiture Allegations; and Special Findings in connection with Count Two, pursuant to 21 U.S.C. § 851, that Green was convicted of murder in Cook County, Illinois, Circuit Court Case No. 1996CR2614402.  Indictment (d/e 9).

ANALYSIS

In order for a court to issue an arrest warrant, the court must have sufficient information to find probable cause exists to believe the defendant has committed a crime.  "[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity;  it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred."  Whitlock v. Brown, 596 F.3d 406, 411 (7th Cir. 2010).   Probable cause is about 'the degree of suspicion that attaches to particular types of non-criminal acts.'  Illinois v. Gates, 462 U.S. 213, 243 n.13, 103 S.Ct. 2317 (1983).

Probable cause inquiry into the totality of the circumstances. District of Columbia v. Wesby, ―― U.S. ――, 138 S.Ct. 577, 588 (2018); Rainsberger v. Benner, 913 F.3d 640, 648 (7th Cir. 2019). Great deference is given to the judge deciding whether to issue a warrant. United States v. Yarber, 915 F.3d 1103, 1105 (7th Cir. 2019).

Under this standard, the Affidavit provided more than ample information to establish probable cause:

1. The CS provided valuable information in the past.

2. The CS told law enforcement officials that a person named "Paris" provided the CS with 35 grams of heroin. The CS provided law enforcement officials with the 35 grams of heroin.

3. The CS made recorded telephone calls with "Paris" in which established the following:

- "Paris" instructed the CS to sell 18 grams of the heroin for $1,500.00;

- CS told "Paris" that he had $1,900.00 in proceeds from the sale of some of the heroin; and

- "Paris" and CS arranged for a meeting so that CS could give "Paris" $1,900.00 that the CS told "Paris" was proceeds from the sale of the heroin.

4. The CS and the CS's vehicle were searched and clear of contraband. CS's vehicle was equipped with audio and video recording equipment. CS was given the $1,900.00 to pay "Paris" and drove under law enforcement surveillance to the designated location to meet "Paris."

5. Green showed up at the designated location at the agreed upon time with the backpack, put the backpack into the trunk of CS's vehicle, got into CS's vehicle, and accepted the $1,900.00 in supposed proceeds from the heroin sale.

6. CS and Green had a conversation about heroin while in CS's vehicle.

7. The K9 alerted on the trunk of CS's vehicle indicating the presence of illegal drugs.

8. The subsequent search showed that the backpack contained heroin, crack cocaine, a pistol, and a digital scale.

9. Green was a convicted felon.

This information is sufficient to demonstrate to a prudent person that criminal conduct has occurred. The fact that Green showed up at the designated time and place and accepted the payment of the $1,900.00 creates a high probability that Green is the drug dealer known to the CS as "Paris". The fact that the probable drug dealer Green put the backpack into the trunk of CS's vehicle and the subsequent search showed that the backpack contained drugs and a weapon

would demonstrate to a prudent person that Green was engaging in criminal conduct involving illegal drug trafficking, possession of a weapon by a felon, and possession of a weapon in furtherance of that drug trafficking.  The Affidavit established probable cause to arrest Green.

Green argues that the Affidavit failed to establish probable cause because the Affidavit did not provide sufficient information to establish the credibility of the CS and because the CS did not appear and testify before the Magistrate Court at the time the Warrant was issued.  Green relies on the cases of United States v. Bell, 585 F.3d 1045, 1049-50 (7th Cir. 2009) and United States v. Glover, 755 F.3d 811, 816-18 (7th Cir. 2014).  In Bell, the Court issued a search warrant based on an affidavit which stated that a confidential informant stated to police that the defendant Bell was selling drugs out of a specific apartment.  The Seventh Circuit found in Bell that the word of the informant alone was insufficient in that case because the affidavit in Bell did not contain enough supporting evidence to corroborate the informant's story and because the informant did not appear in person before the judge who issued the warrant.  Bell, 585 F.3d at 1049-50.  In Glover, the affiant officer omitted material information from the affidavit that would have undermined the confidential informant's credibility.  Glover, 755 F.3d at 817-18.

The facts in this case are nothing like the facts in either <u>Bell</u> or <u>Glover</u>. The Affidavit in this case included a great amount of evidence beyond the CS's initial information. The audio and visual recordings and the personal observations of the law enforcement officials established that Green showed up at the agreed upon location to collect the $1,900.00 in payment for the heroin, Green and CS discussed heroin at the time, and Green accepted the $1,900.00 payment for the heroin. Green's observed and recorded actions and statements provided probable cause to believe that he was "Paris," the individual who supplied CS with heroin for distribution. The officers also personally observed Green put the backpack into the trunk of CS's vehicle. The K9 alerted on the trunk of CS's vehicle indicating the presence of illegal drugs. The search of the backpack found illegal drugs and a firearm. The totality of the circumstances corroborated the CS's information and provided more than enough information to support the finding of probable cause that Green engaged in criminal activity involving drug trafficking, possession of a weapon by a felon, and possession of a weapon in furtherance of his drug trafficking. The <u>Bell</u> and <u>Glover</u> decision do not apply to this case. The Affidavit in this case provided probable cause to arrest Green. The Warrant was valid and the Indictment should not be dismissed.

THEREFORE, THIS COURT RECOMMENDS that Defendant Pete Green's Motion to Dismiss Indictment Based on No Probable Cause to Assert (d/e 13) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See Local Rule 72.2.

ENTER: December 13, 2019

s/ *Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE